CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

MAR 23 2006

JOHN F. CORCORAN, CLERK
BY:
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ELTON LEE WILLIAMS, ) | |
| Plaintiff, ) | Civil Action No. 7:01-cv-00274 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| RONALD J. ANGELONE, et al., ) | By: Hon. James C. Turk |
| Defendants. ) | Senior United States District Judge |

Plaintiff Elton Lee Williams, an inmate in the custody of the Virginia Department of Corrections ("VDOC"), is proceeding pro se in this civil action. Of the many claims raised in his original complaint,[1] the only claim remaining before the court is Williams's assertion that enforcement of the VDOC's grooming policy, Departmental Operating Procedure 864 ("DOP 864"), places substantial burdens on his religious practices in violation of the Religious Land

---

[1] Williams originally raised only constitutional and state law challenges to the grooming policy and other incidents. In November 2001, after defendants moved for summary judgment, Williams moved to amend his complaint to add numerous other claims, including RLUIPA claims for monetary and injunctive relief. By order entered December 17, 2001, the court granted the amendment only to the extent that it raised RLUIPA claims arising from the same facts as the claims in the original complaint. Defendants then filed a motion to dismiss the RLUIPA claims on the ground that the statute was unconstitutional as applied to state prisons. In March 2003, the court dismissed or granted summary judgment as to Williams's constitutional and supplemental state law claims regarding the grooming policy and other prison practices and dismissed his RLUIPA claims under this court's holding in Madison v. Riter, 240 F. Supp. 2d 566 (W.D. Va. Jan. 23, 2003), rev'd 355 F.3d 310 (4th Cir. Dec. 8, 2003), cert. denied, 125 S. Ct. 2536 (March 30, 2005). After the United States Court of Appeals for the Fourth Circuit reversed the 2003 Madison decision, that court also vacated the 2003 judgment in this action only as to Williams's claims under RLUIPA and remanded those issues for further development; the Fourth Circuit specifically affirmed the portion of the judgment finding no violation of Williams's constitutional rights. After the remand, the court stayed the action until the Supreme Court decided Cutter v. Wilkinson, 125 S. Ct. 2113 (2005), holding that RLUIPA does not violate the Establishment Clause, and denied certiorari in Madison. The court then reinstated Williams's case to the active docket and granted defendants an opportunity to file dispositive motions on the merits of his RLUIPA claims, which they did. In their current submissions, defendants incorporate by reference all the arguments and exhibits from their previously filed motion for summary judgment, dated November 7, 2001.

1

Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et. seq. Defendants filed a motion for summary judgment asserting that because the challenged policy furthers compelling penological interests by the least restrictive means, it does not violate Williams's rights under RLUIPA. Williams responded, making the matter ripe for the court's consideration.[2] Upon review of the record, the court concludes that the motion for summary judgment must be granted.

## I. Background

Section 3 of RLUIPA prohibits governments from enacting regulations, including rules of general applicability, or otherwise taking actions that impose a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that imposition of that burden furthers "a compelling governmental interest" by "the least restrictive means." § 2000cc-1(a)(1)-(2). This strict-scrutiny standard applies any time such a burden on religious exercise occurs "in a program or activity that receives Federal financial assistance," or "affects, or removal of that substantial burden would affect," interstate or foreign commerce.[3] Id. The statute creates a private cause of action for persons who allege that a government has substantially burdened their religious conduct. § 2000cc-2(a). Once the

---

[2] Before responding to defendants' first motion for summary judgment, Williams made several requests for discovery. The court granted defendants' motion for protective order, pending rulings on threshhold issues. After the Fourth Circuit remanded the case solely as to the RLUIPA claims, Williams did not renew his requests for discovery and responded to defendants' motion for summary judgment without indicating any need for discovery. Moreover, the court has reviewed his previous discovery requests and finds that they are either addressed through defendants' exhibits or they are unnecessary to plaintiff's ability to respond to the issues at this summary judgment stage of the proceedings.

[3] In their current motion, defendants do not argue that they are not subject to RLUIPA, although they reserve their constitutional arguments.

2

plaintiff demonstrates that the challenged law places a substantial burden on his exercise of sincere religious beliefs, the government program must prove that the imposition of the burden furthers a compelling interest by the least restrictive means. § 2000cc-2(b).

On December 15, 1999, the VDOC began enforcing DOP 864, setting forth new personal grooming standards for all inmates who are incarcerated in VDOC facilities. The policy covers hair care, hair style, beards, mustaches, fingernails and general hygiene. Defendants assert that this grooming policy was designed to promote safety, security, and sanitation, and to facilitate the identification of inmates. DOP 864 directs that male inmates must keep their hair no more than one inch in depth and thickness. Male inmates may not wear beards, goatees, or sideburns below the middle of the ear unless they obtain an order from medical staff exempting them from shaving. Men who get a no-shave order for medical reasons must keep their facial hair trimmed to one eighth of an inch in length or shorter. DOP 864 prohibits male inmates from wearing certain hair styles such as braids, plaits, dreadlocks, cornrows, ponytails, buns, mohawks, partially shaved heads, designs cut into the hair, or any style which could conceal contraband.

Inmates who refuse to cut their hair, beards, and/or fingernails, or to alter their hair styles to comply with the specifications of this procedure will be given an order to do so. If an inmate continues to refuse to comply, he will be charged with a disciplinary code violation and be placed on pre-hearing detention. If convicted of the charge, that inmate will serve an isolation sentence. If he is convicted of two more such violations, he will serve two additional, longer isolation sentences and then be referred to the Institutional Classification Authority for assignment to segregation, possible reclassification to a higher security level institution, and a possible reduction in the rate at which he can earn good time or earned sentence credit. The

3

inmate will remain assigned to segregation until he fully complies with the grooming standards.

Williams signed and dated his complaint on April 2, 2001, seeking compensatory and injunctive relief; he later amended to seek compensatory damages as to his RLUIPA claims. He states that he has been a Rastafarian of the Nyahbinghi Order for approximately eight years. He submits documentation indicating that his religious beliefs require him to leave his hair and beard uncut. When the VDOC began to enforce DOP 864 in December 1999, Williams was housed at Bland Correctional Center, a level II security facility on a scale in which level VI is the most secure. Williams refused to cut his hair and beard in compliance with the new grooming standards, so officials placed him in administrative segregation, pursuant to DOP 864 penalty provisions. Under these provisions, Williams also lost telephone, visitation and commissary privileges, was charged with disciplinary infractions for his noncompliance, and served lengthy periods of isolation. He has remained in segregated confinement ever since.

Williams can have no RLUIPA claim regarding events that occurred before that statute took effect in September 2000. In the winter of 2000 and 2001, he allegedly suffered the following deprivations that he now styles as RLUIPA claims: lack of due process protections; long terms of confinement in isolation; denial of education and rehabilitation programs; denial of the right to congregate with fellow believers; reduced ability to earn good conduct time and increased security level; confinement in hot, dry cell with inadequate ventilation;[4] transfer to lower security prison not designed for inmates confined to their cells more than 164 hours per

---

[4] Williams alleges that the cell remained at ninety degrees and that conditions caused him to suffer constant nosebleeds, which were not treated.

4

week; lack of adequate cleaning materials;[5] assignment to a double cell with higher security level inmate without due process; receiving his religious food tray from officers who chewed tobacco even though tobacco products were prohibited in the segregation unit; being shocked six times with an electrical device and then being thrown in a cell with a higher security inmate; denial of due process in disciplinary proceedings for charges that he violated DOP 864; denial of adequate hair care products; denial of daily showers; and filthy shower conditions.[6]

Williams complains that his continued administrative segregation status prevents him from practicing his religious beliefs in totality. In particular, he asserts that DOP 864 provisions prevent him from congregating with other believers to pray, study, and discuss while playing drums or music. He states that reading religious literature or praying alone in one's cell is not a sufficient means of practicing his Rastafarian beliefs.

Defendants offer the affidavit of Gene Johnson, Director of the VDOC, who has nearly forty years of experience at various levels of prison administration. Johnson states that when the VDOC first implemented DOP 864, the penalty provisions for noncompliant inmates were more stringent than the restrictions placed on other inmates in administrative segregation status. Officials hoped these stricter penalties would make administrative segregation less attractive, so that more inmates would comply with the grooming standards. The VDOC revised the grooming policy in 2003 to eliminate these additional restrictions. Under the current version of DOP 864,

---

[5] Williams alleges that he was forced to clean his toilet and his cell floor with the same sponge and without gloves, causing his fingertips to peel.

[6] As stated, the court previously found that Williams's allegations regarding these deprivations did not state any constitutional claim actionable under 42 U.S.C. § 1983, and the Fourth Circuit affirmed that portion of the court's judgment.

5

inmates assigned to segregation for violating the grooming standards have the same privileges as inmates assigned to administrative segregation for other reasons. They may have one visit (other than legal visits) each week with up to five persons; limited commissary privileges; and up to two telephone calls per month (excluding legal calls). Johnson explains the security, health, and sanitation problems that DOP 864 was designed to alleviate and cites numerous, specific examples of instances when inmates' uncut hair or beards caused such problems in VDOC institutions.

## II. Analysis

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Fed. R. Civ. P. 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). The moving party is not entitled to summary judgment, however, if the parties' dispute over a material fact is "genuine." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Id. When defendants make a motion for summary judgment, properly supported by affidavits, plaintiff may not rest on the mere allegations or denials of the pleadings. Fed. R. Civ. P. 56(e). He "must identify affirmative evidence from which a jury could find" in

6

their favor. Anderson, 477 U.S. at 256-57. Summary judgment appropriately lies for the movant only if there can be but one reasonable conclusion drawn from the evidence, against the non-moving party. Id. at 247-48.

The court recently held that enforcement of the current DOP 864 grooming policy provisions against an inmate who keeps his hair uncut in keeping with his religious beliefs did not violate that inmate's rights under RLUIPA. Ragland v. Angelone, ___ F. Supp. 2d ___, No. 7:02-cv-00786, 2006 WL 679773 (W.D. Va. March 14 and 16, 2006).[7] Like Williams, Plaintiff Ragland is housed in segregation because he continues to refuse to comply with DOP 864. The defendant prison officials did not contest the sincerity of Ragland's religious beliefs that required him not to cut his hair, nor did they contest his assertion that enforcement of DOP 864 against him placed substantial burdens upon his practice of this belief and that he thus stated a prima facie claim under RLUIPA. Id. at *5. In support of the policy, defendants in Ragland offered an affidavit from Gene Johnson, very similar to his affidavits offered in this case. Noting the court's continuing obligation under RLUIPA to defer appropriately to the expert opinions of experienced prison administrators in prison policy matters, the court first found that defendants had established that compelling state interests in security, staff safety, inmate identification, and inmate health are furthered by the grooming policy. Id. at *6. The court also found that defendants had established a compelling interest in uniform enforcement of the grooming policy in the general population and in segregating all noncompliant inmates. Id. at *7-8. Again

---

[7]The day after issuing the initial memorandum opinion in Ragland, the court issued a supplemental memorandum opinion discussing additional precedent from the United States Court of Appeals for the Fourth Circuit. That supplement is part of the court's published opinion in the case.

7

deferring to Johnson's expertise, the court then held that defendants had established that creating any religious exemption to segregation restrictions for such inmates would present unacceptable, new or additional security risks. Id. at *8-9. Thus, the court found that DOP 864 in its current form furthers compelling interests by the least restrictive means and that defendants were entitled to summary judgment as a matter of law as to Ragland's claims under RLUIPA. Id. In addition, the court found that defendants were entitled to qualified immunity against any claims for monetary damages for alleged violations of RLUIPA. Id. at *4, citing Jackson v. District of Columbia, 89 F. Supp. 2d 48, 65-69 (D. D.C. 2000), vacated on other grounds, 254 F.3d 262 (D.C. Cir. 2001).

Defendants in this case do not contest Williams's assertions that his sincere religious beliefs require him to wear his hair uncut in defiance of the grooming policy. For purposes of this opinion, the court assumes without deciding that enforcement of the grooming policy against Williams places a substantial burden on his religious practice.[8] For the reasons stated in the Ragland opinions, however, the court concludes that DOP 864 meets RLUIPA's strict scrutiny standard and that defendants in this case are entitled to summary judgment. Williams fails to show any genuine issue of material fact in dispute. As the court found in Ragland, prison officials have offered sufficient evidence that segregation of inmates who refuse to cut their hair,

---

[8]Defendants make a strong argument that the grooming policy does not substantially burden Williams's religious practice. Williams can wear his hair long in keeping with his beliefs. He also does not dispute defendants' evidence of other religious activities available to him in segregation: possession of religious property items, reading religious materials, listening to religious programs, contacting religious leaders or the chaplain, prayer, and other religious practices in one's cell. Most other restrictions on segregation inmates could be termed relatively minor inconveniences when compared to the normal constraints of prison life. Clearly, the segregation restrictions have not been so oppressive as to compel Williams to violate his religious beliefs by cutting his hair or beard in order to comply with the grooming policy and escape its effects.

8

like Williams, is the least restrictive way to control the compelling risks that hair presents. The alternatives and exemptions that plaintiff suggests, or highly similar ones, the court addressed in the Ragland case. In this case, as in Ragland, the court must defer to defendants' specific expert opinion that such alternatives are unworkable in light of defendants' strong interest in maintaining uniform enforcement of segregation restrictions.[9]

As stated, Williams primarily complains that segregation status prevents him from congregating with fellow believers, an important aspect of his religious practice. Defendants'

---

[9]Williams asserts that as a less restrictive alternative to segregating inmates who are noncompliant with DOP 864, the VDOC could transfer them to other prison systems that allow inmates to keep their hair and beards uncut, as the court held in Gatrell v. Ashcroft, 191 F. Supp. 2d 23 (D.D.C. 2002). The plaintiffs in Gatrell were District of Columbia (D.C.) inmates in the custody of the United States Bureau of Prisons ("BOP"), who were housed in VDOC prisons under intergovernmental contracts. Id. at 26-27. Plaintiffs, whose religious beliefs required them to wear their hair and beards uncut, sued the District of Columbia, claiming that the VDOC's grooming policy violated their rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, et seq.; RFRA applies the same strict scrutiny test to the free exercise claims of federal prisoners that RLUIPA now applies to state prisoners. Id. at 24. After a three-day trial, the court found that the VDOC grooming policy substantially burdened plaintiffs' religious practice of wearing uncut hair and beards. Id. at 37-38. The Gatrell court also found that as a less restrictive alternative, the BOP could easily have placed plaintiffs at one of many institutions in the nation-wide BOP prison system that did not have a grooming policy requiring plaintiffs to cut their hair. Id. at 38.

The facts of the Gatrell case are clearly distinguishable from the facts of Williams's case. Today, the VDOC grooming policy allows Williams to wear his hair and beard uncut in keeping with his religious beliefs. The plaintiffs in Gatrell would not have had this option if they had returned to a VDOC prison in 2002. Id. at 37-38. Moreover, defendants have provided evidence that the VDOC transfer system differs dramatically from the BOP system. While the BOP may simply choose to transfer inmates within its own prison system to institutions with no hair cutting requirement, the VDOC would have to find another jurisdiction's prison system that has no hair cutting regulation and that also wishes to trade the right number of inmates of similar security level at the right time. To participate in this barter/transfer scheme, VDOC inmates generally must meet specific criteria and wait for their names to reach the top of a waiting list for such transfers. Putting religious exemptions above nonreligious transfer requests would be unfair, would create resentment, and would foster copycat transfer claims from inmates who would "find" religion in order to make an end run around the ordinary VDOC transfer system. As the court found in Ragland, the transfer option is not a workable alternative within the VDOC system. 2006 WL 679773 at *8.

9

evidence indicates that allowing such gatherings of segregation inmates with long hair would present the same risks as existed before the grooming policy—that inmates would hide contraband in their hair, pass it to each other during the meeting, or use it to injure staff or other inmates, or that inmates in close contact with each other might spread parasites or other hair-related health problems. The fact that plaintiff and others of his faith have never used their hair to violate other prison policies does not eliminate the risks presented by their hair itself that such problems might occur in the future. Other inmates in the segregation unit may be equally eager to congregate with others for nonreligious reasons and would undoubtedly resent a religious exemption, leading to heightened risks of retaliation, violence, or pretended religious needs to congregate. Indeed, as the court found in Ragland, allowing a religious exemption from any of the challenged segregation restrictions would potentially have these effects and thus create new security risks of the very sort the grooming policy is designed to control. Id. at *8-9.

With the requisite level of deference to officials' expertise in policy matters, for the reasons stated in Ragland and in this opinion, the court concludes that defendants are entitled to summary judgment as a matter of law as to all plaintiff's claims for injunctive relief regarding the enforcement of the current VDOC grooming policy. Furthermore, the court also concludes that defendants are entitled to summary judgment on the ground of qualified immunity as to plaintiff's RLUIPA claims for monetary damages. The defendants are thus entitled to qualified immunity as to Williams's claims arising from the harsher restrictions imposed under earlier versions of the grooming policy and his many claims of mistreatment in the segregation unit

during 2000-2001.[10] Id. at *4. The court will grant defendants' motion for summary judgment. An appropriate order shall be issued this day

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 23rd day of March, 2006.

*/s/ James C. Turk*
Senior United States District Judge

---

[10]Many of Williams's claims allege specific events or undesirable living conditions he coincidently encountered after officials assigned him to segregation and suspended many privileges because of his noncompliance with DOP 864. These events and conditions, such as his being housed in an overly hot cell, his inability to obtain treatment for nosebleeds, the use of the electrical stun device against him, being celled with a high security inmate, and so on, did not occur pursuant to the grooming policy itself. Such alleged incidents cannot be termed "substantial burdens" placed on his religious beliefs by the policy he is challenging and so do not give rise to claims under RLUIPA. As stated, the court has already addressed and dismissed these allegations as constitutional claims.

11